## STATE *v.* PETER DOWNING.

Where, upon the trial of an indictment against A and B for an affray, it was in evidence: That A had gone to the front gate of B's premises, and an altercation having arisen between them, B had ordered A to leave, and upon his refusal to do so had gone to his house, some forty yards distant and procured his pistol, and come back to the gate with it in his hand, A in the mean time having left the gate and walked off some thirty yards. Upon seeing B with the pistol in his hand, A returned, defying at the same time B to shoot, and B did shoot him in the leg: *It was held,* that it was not error to charge the jury, that in any view of the case the defendants were both guilty.

INDICTMENT for an *affray,* tried before *Moore, J.,* at Spring Term, 1875, WASHINGTON Superior Court.

The defendant was jointly indicted with one Levi Arnold. The facts in the case are substantially as follows :

During the month of August, Arnold came to the front gate of Downing's premises, and having called out Downing's wife, began to curse and abuse her husband, because, as Arnold alleged, Downing had committed adultery with his (Arnold's) wife. Downing came from his house to the gate, remaining on the inside. At that time Arnold was in a road leading from one public road to another. The portion of the road on which Arnold was standing was upon the land of Downing. When Downing came to the gate, Arnold charged him with being too intimate with his wife. They then had some words, and Downing ordered Arnold to leave, which he refused to do, saying he came to kill or be killed. Downing then said, " I will make you leave," and went to his house, (distant about forty yards,) got his pistol, and returned to the gate with it in his hands.

When Downing reached the gate, Arnold had started off, and was about forty yards distant. He turned, and seeing Downing's pistol, opened his breast, and with an oath, told Downing to shoot, and immediately started toward the gate

in a violent manner. When he was near the gate, Downing shot him in the leg. The gate was shut. Arnold had no weapon. Downing had only one arm.

His Honor charged the jury that in any view of the case, the defendants were both guilty. The defendant excepted.

The counsel for the defendant asked his Honor to charge the jury, that considering the relative strength of the parties, and the threats of Arnold, if the defendant had reasonable ground to believe that Arnold was about to inflict upon him great bodily harm, he had a right to use such force as was necessary to protect himself, and if they should find that he used no more force than was necessary for his protection, the defendant Downing was not guilty.

His Honor declined so to charge, and repeated his first instruction. The defendant excepted.

The jury rendered a verdict of guilty, whereupon the defendant moved for a new trial. Motion overruled.

The court rendered judgment against the defendants; from which judgment the defendant Downing appealed.

*Walter Clark,* counsel for defendant:

The jury are the sole judges of the weight of the evidence. *State* v. *Davis*, 1 Ired., 125; *State* v. *Crow*, Ibid, 375. Wharton's American Criminal Law, 1250. Bishop's Criminal Law, vol. 2, secs. 384, 627, 628, 634, 643. *State* v. *Harris*, 1 Jones, 190; *Wittkowsky* v. *Wasson*, 71 N. C. Rep., 471.

Hence, whether the defendant, from the declarations and actions of the prosecutor, had reasonable fear of bodily harm, should have been left to the jury.

*Attorney General Hargrove,* for the State.

SETTLE, J. We concur with his Honor in the opinion, that in any view of the case, the defendants were both guilty.

The evidence furnishes no ground for the defence relied

upon by the defendant, to-wit, that one having reasonable ground to believe that great bodily harm is about to be inflicted upon him, has a right to use such force as is necessary to protect himself.

It was not necessary for Downing, after he had left the gate at the road and gone some thirty or forty yards to his house, to return to the gate, with his pistol in his hand, in order to protect himself from great bodily harm. If indeed he feared such harm, it would seem that the house, some distance from his antagonist, was a much safer place than the side of the road, where he had just left him.

But having armed himself, he returned to the road, evidently for the purpose of asserting his manhood, and attesting his willingness to engage in combat.

Why go to the gate with his pistol, for self-defence, when Arnold had already left it some thirty or forty yards? What was there in the manner of Arnold's return to excite his fears of great bodily harm?

Arnold opening his breast, advanced towards the gate, which was closed, without any weapon, defying Downing to shoot, thereby clearly giving his assent to a breach of the peace, but by no means giving Downing any reasonable ground to apprehend great bodily harm.

The big talk of Arnold, that he came to kill or be killed, amounted to nothing in connection with the other circumstances, and evidently did not put Downing in fear.

Indeed, there is nothing in the evidence which would have justified his Honor in presenting the view of the case contended for by Downing to the consideration of the jury.

PER CURIAM.                    Judgment affirmed.